hPEATROSS, J.
Defendant-in-Intervention, Janet Evans Toms (“Mrs. Toms”), appeals the judgment of the trial court granting Plaintiffs’in-Intervention, the minority stockholders of Cooperative Management Corporation (“CMC”), Motion for Writ of Mandamus to prevent the issuance of stock to Mrs. Toms in violation of its by-laws. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL HISTORY

Mrs. Toms has sued CMC, a closely held family corporation, to rescind a 1988 transaction in which 150 shares of stock in CMC were redeemed by CMC for $22,500. It is the assertion of Mrs. Toms that she learned from a subsequent appraisal of CMC’s immovable assets that she received significantly less for her stock than it was actually worth. After filing of suit by Mrs. Toms, a majority of CMC’s Board of Directors (“the Board”) decided, in an attempt to settle this litigation, to issue 150 new shares of CMC stock to be sold to Mrs. Toms for $22,500. A group of minority shareholders of CMC did not approve of the Board’s decision and have intervened seeking to prevent the proposed sale on the basis that the transaction will necessarily result in an increase of CMC’s stated capital account, an action that requires approval of the shareholders owning 85 percent of the stock in CMC under Article VII(2) of its by-laws. No such approval has been sought by, or granted to, the Board.
The parties have stipulated to the following facts:
1)CMC was formed in 1971 with its shareholders being Mr. and Mrs. J.O. Evans, their children, J. Bruce Evans, Barbara Evans Rogers, Janis Evans Leach and Janet Evans Toms, and their respective spouses. The capital contributions of the original shareholders included land owned or donated by Mr. and Mrs. J.O. Evans. The assets of CMC consist of approximately 1700 acres of timber land with long-term timber leases on 974 acres. All of the CMC stock is no par stock.
2) The Articles of Incorporation and the by-laws were offered as joint exhibits. The pertinent section to this |2case is Article VII(2) of the by-laws, which reads as follows:
The affirmative vote or written consent of 85% of the holders of each class or series of stock as may be issued and outstanding shall be necessary for any of the following voluntary corporate actions:
[[Image here]]
(2) Reduction or increase in the stated capital of the corporation.
[[Image here]]
3) Mrs. Toms owned 150 shares of stock in CMC prior to November 1988.
4) On November 24, 1988, the Board of CMC, by unanimous vote, authorized the redemption and cancellation of Mrs. Toms’ 150 shares of stock for a total redemption price of $22,500, or $190 per share. The directors who authorized the action owned more than 85 percent of the stock of CMC. The minutes of the November 24,1988 meeting were also entered as a joint exhibit.
5) On April 1, 1997, Mrs. Toms sued CMC for rescission of the 1988 stock redemption transaction alleging that a 1993 independent appraisal of CMC immovable property revealed that there was an error in the valuation of her CMC stock resulting in a payment to her of less than fair market value for her stock.
6) The CMC Board, by majority vote, approved a resolution on October 19, 1997, authorizing an increase of its stock by 150 shares, the entirety of which were to be sold to Mrs. Toms at a price of $22,500 ($190 per share). The directors who voted in favor of *166 the resolution owned less than 85 percent of the stock of CMC. Mrs. Toms agreed to dismiss her suit upon receipt of the shares.
7) On that same date, the Board, by majority vote, approved a resolution providing that any consideration paid to CMC by a person for shares of stock be allocated to the capital surplus account of CMC rather than to stated capital. The directors voting in favor of the resolution owned less than 85 percent of the stock of CMC. The Board intends to allocate the sums paid by Mrs. Toms for the 150 shares of stock to the capital 1 ¡¡surplus account of CMC and allocate $0.00 to the stated capital account.
8) The minutes of the October 19, 1997 meeting were entered into evidence as a joint exhibit. (The pertinent minutes of that meeting revealed that it was a special-called meeting for the purpose of addressing the issue of Mrs. Toms’ lawsuit.) A motion was made to enact a resolution stating that “any and all consideration paid by any person or entity for issuance of shares in [CMC] shall be allocated to the capital surplus account of the corporation and not the stated capital account.” Evan Rogers, a director and shareholder, objected to the resolution noting that the shareholders had already voted on and rejected the motion and that “this was simply an attempt to circumvent the 85% requirement.” Evan Rogers . also passed out copies of several statutes concerning fiduciary duty (La. R.S. 12:61, 91 and 92) to all members of the Board and explained the duty to only issue stock for fair market value and that the amount offered in the proposal was not fair market value. A motion was then made to increase CMC’s shares by 150 to be sold to Mrs. Toms for $22,500. The motion was passed with some opposition.

DISCUSSION

We review this case de novo because we are only faced with issues of law since the parties have stipulated to all pertinent facts. City of New Orleans v. Board of Commissioners, 93-690 (La.7/5/94), 640 So.2d 237.
The Defendants-in-Intervention, CMC and Mrs. Toms, take the position that they are able to engage in the proposed transaction for two reasons. First, they assert that La. R.S. 12:61(A), which states, in pertinent part:
Upon the initial issuance of shares without par value, the board of directors shall state an amount to be allocated to stated capital and the remainder of any consideration therefore shall be allocated to capital surplus;
allows a board of directors, in its discretion, to allocate all of the consideration paid for no par value stock to the capital surplus account without having any effect on stated capital. It is their intention to allocate $0 to stated capital, which they | ¿agree is a stated amount in accordance with La. R.S. 12:61(2). We disagree. The trial court succinctly addressed this issue, stating:
The Court is of the opinion that a clear reading of [La. R.S. 12:61(A) ] requires at least a portion of the sales price of the new stock be allocated to stated capital. The words of the statute are clear: The board of directors shall state an amount to be allocated to stated capital. Clearly the law requires some portion of the revenue from the new stock be allocated to stated capital. To hold otherwise would render this portion of the statute meaningless. (Emphasis theirs.)
The trial court also relied on Fletcher’s Cyclopedia of Law of Private Corporations, Volume II, Section 5128, which states:
5128. Increase of shares and capital— in general
*167 To increase its number of authorized shares, a corporation must amend its articles or certificate of incorporation to reflect the increase. For corporations adhering to legal capital rules, the amendment may include an adjustment to the authorized capital representing the aggregate par value, if any, of the newly authorized shares.
In states that adhere to legal capital requirements, an increase in issued shares may require an adjustment of the corporation’s stated capital account. The stated capital account includes the aggregate par value of all issued shares, plus at least a portion of the consideration received on the issuance of no-par shares. (Emphasis ours.)
We find no error with the trial court’s interpretation of La. R.S. 12:61. Any other reading would render the statute meaningless. Zero is not an amount. Zero is no amount.
Second, the Defendants-in-Intervention, CMC and Mrs. Toms, argue that the 150 shares of stock originally redeemed by Mrs. Toms constitute treasury stock which the Board simply ordered to be reissued again to Mrs. Toms, in accordance with La. R.S. 12:55, with no effect on stated capital. We find no merit to this argument. As the trial court pointed out, the evidence clearly shows that the shares redeemed from Mrs. Toms were canceled and the stated capital was proportionately reduced. The minutes of the October 19, 1997 Board meeting Rsliow that a motion was made to “increase [CMC’s] shares by 150.” Further, the minutes of the November 24, 1988 meeting note an official authorization to remove from the CMC books and treasury those shares redeemed by Mrs. Toms on November 10, 1988, reducing the “total shares of outstanding stock in [CMC] from 1200 (original issue) to currently 850.” [1]
We find, therefore, that the trial court was correct in its finding that the record does not support Mrs. Toms’ position that the reissuance of existing treasury stock would not result in an increase in the stated capital of the corporation. Moreover, the trial court was correct in issuing a Writ of Mandamus, as prayed for by the intervening shareholders, directing CMC to adhere to its own by-laws, specifically Article VII(2), in obtaining approval of the shareholders owning 85 percent of the stock in CMC to increase capital surplus prior to the issuance of any new stock.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to PlaintiffiDefendanL-in-Inter-vention, Janet Evans Toms.
AFFIRMED.

. The secretary-treasurer was authorized to remove those stocks redeemed from Mrs. Toms, as well as 100 shares acquired by donation from J.O. Evans and 100 shares acquired by donation from Constance C. Evans, from the books of CMC, reducing the total outstanding stock by 350.